UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONALD RAHM; MARK LAJUENESSE,
PHILIP PACIFICO; JOSEPH P. GROSS;
LAWRENCE SPRARAGEN; and SIMEON
HUNDSEN, as Trustees of the I.B.E.W.,
Local 236 Pension Fund, I.B.E.W., Local
236 Health and Benefit Fund and I.B.E.W.,
Local 236 Annuity Fund,

       Plaintiffs,

 -against-         1:07-CV-0726 (LEK/DRH)

J. HALL, LTD.,

       Defendant.

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

Presently before the Court is a Motion for partial summary judgment (Dkt. No. 11) filed on behalf of Donald Rahm, Mark Lajuenesse, Philip Pacifico, Joseph P. Gross, Lawrence Sparagen, and Simeon Hunsden (collectively, "Plaintiffs"), acting in their capacity as trustees of certain labor-management benefit funds. Plaintiffs bring their action for monetary and injunctive relief under Sections 502 and 515 of the Employee and Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132; 29 U.S.C. § 1145, alleging that J. Hall, Ltd. ("Defendant") failed to make required contributions to the funds. Compl. (Dkt. No. 1).

Plaintiffs' instant Motion seeks a declaration that Defendant is obligated to contribute to the benefit funds on behalf of Defendant's non-union employees who performed electrical work for the period from January 1, 2003 to the present; monetary judgment against Defendant in specified sums for contributions allegedly owed to the funds, plus interest, on behalf of those employees; and

auditing fees. See Rahm Aff. (Dkt. No. 11-4) at 17-18. For the reasons that follow, Plaintiffs' Motion is granted in part and denied in part.

**II.    BACKGROUND**

Plaintiffs are the trustees of the I.B.E.W., Local 236 Pension Fund, I.B.E.W., Local 236 Health and Benefit Fund, and I.B.E.W., Local 236 Annuity Fund (collectively, the "Funds"). Pls.' Statement of Material Facts ("Pls.' SOMF") (Dkt. No. 11-3) ¶ 1, 4.[1] The Funds are jointly administered employee labor-management trust funds established and maintained pursuant to collective bargaining agreements and Trust agreements (collectively, the "Agreements") between I.B.E.W. Local 236 ("the Union") and employers in the electrical construction industry in accordance with 29 U.S.C. § 186(c)(5). Compl. ¶¶ 6, 10; Pls.' SOMF ¶ 5.

Defendant J. Hall, Ltd. is a contractor based in Ravena, New York, that performs electrical, instrumentation, labor, and other types of work throughout the capital district area for residential and commercial customers. Answer (Dkt. No. 5) ¶ 9. It is owned by President/Secretary, Jerome R. Hall, and his wife. Hall Aff. (Dkt. No. 17-7) ¶¶ 1, 4. The company employs thirteen individuals, three of whom are members of the Union. Id. ¶ 16. On October 13, 1999, Jerome Hall, on behalf of Defendant, signed a letter of assent ("Letter of Assent") to be bound by CBAs with the Union. 1999 Letter of Assent (Dkt. No. 11-4, Ex. A); see also Pls.' SOMF ¶ 8.

Under the Agreements, employers contribute to the Funds on behalf of eligible participants and beneficiaries. Pls.' SOMF ¶ 8. The beneficiaries receive pension, health and benefit, and annuity benefits through the Funds. Compl. ¶ 6. The Agreements obligate Defendant to submit

---

[1] For reasons detailed below, all facts are presented in the light most favorable to Defendant. Facts taken from Plaintiffs' Statement of Material Facts have been admitted to by Defendant. See Def.'s Resp. to Pls.' Statement of Material Facts ("Def.'s SOMF Resp.") (Dkt. No. 18).

monthly payroll reports ("Reports") detailing those employees for whom contributions are required. Pls.' SOMF ¶ 10. The Agreements also grant Plaintiffs the right to inspect Defendant's books and records when pertinent to the administration of the Funds. Id. ¶ 13.

Defendant filed monthly Reports on which it listed its three union employees, the number of hours they worked, and the wages they earned; the Reports indicate that Defendant calculated and made payments to the Funds on these three employees' behalf.[2] Id. ¶ 11; Def.s' SOMF Resp. ¶¶ 11, 9. Non-union employees Kelly Stone and Michael Brown were among Defendant's employees who were not listed in the Reports. Pls.' SOMF ¶¶ 15, 19; Def.'s SOMF Resp. ¶¶ 15, 19. Plaintiffs, acting through their auditor, Joseph W. McCarthy of Joseph W. McCarthy & Associates, requested to conduct an audit of Defendant's books and records; Defendant responded that they could access only the payroll records for its union member employees. Pls.' SOMF ¶ 12.

On June 12, 2007, Plaintiffs brought this action on behalf of the Funds and their beneficiaries seeking a full and complete audit of Defendant's books and records to determine whether Defendant had made its required contributions to the Funds and, pending the results of that audit, seeking monetary judgment in the amount determined necessary for Defendant to comply with its obligations. See generally Compl. Defendant denies that the Letter of Assent or the relevant collective bargaining agreement ("CBA") require it to make contributions to the Funds on behalf of non-union employees. Answer ¶¶ 10, 11, 31; see also Def.'s SOMF Resp. ¶ 8.

The case at bar focuses on the interpretation of the rights and responsibilities engendered by Article VI of the CBA (Dkt. No. 17-8, Ex. A). That Article addresses fringe benefits, delineates to

---

[2] Following a December 2005 audit that showed a $714 deficiency in Defendant's contributions to its three union employees, Defendant made additional contributions to cover the underpayment. Hall Aff. ¶ 9.

whom such benefits are to be paid, and sets forth the amount of contribution that is to be contributed to each of three funds: the Health and Welfare Fund, the Pension Fund, and the Annuity Fund. Specifically, the language in dispute is found in CBA Article VI, Sections 6.02, 6.03, and 6.04, and is set forth below:

> **Section 6.02-Health and Welfare Fund:**
> The Employer shall contribute five dollars and thirty cents ($5.30) per hour for each electrical worker employed by him in the jurisdiction of the Local Union into the Welfare Fund of such Local. . . .
>
> **Section 6.03-Pension Fund:**
> The Employer shall contribute three dollars and twenty five cents ($3.25) per hour for each journeyman/wireman and third through sixth Period apprentice employed by him in the jurisdiction of the Local Union into the Pension Fund of such Local. . . .
>
> **Section 6.04-Annuity Fund:**
> Effective March 1, 1999 the Employer shall contribute one dollar ($1.00) per hour for each Journeyman Wireman and Third through Sixth Period Apprentices. . . .

CBA at 48-49.

Following conferences between the parties and magistrate judge assigned to this case, Defendant allowed Plaintiffs to perform their requested audit. Pls.' Mem. of Law in Supp. Mot. for Summ. J. ("Pls.' MOL") (Dkt. No. 11-2) at 2. Based on the results of that audit, Plaintiffs seek contributions from Defendant to the Funds on behalf of Michael Brown and Kelly Stone, two of Defendant's non-union employees referred to on Defendant's records as "electricians." Pls.' MOL at 7. They also seek auditor fees of $5,128.35. Rahm Aff. (Dkt. No. 11-4) at 18. Defendant opposes Plaintiffs' Motion and claims that it is not obligated to make contributions on these or other non-union workers' behalf. Def's Br. in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Opp'n MOL") (Dkt. No. 17-10) at 2. It also asserts that because the CBA does not authorize payment of contributions for non-union employees, it is not liable for auditor fees associated with the auditing

4

of non-union employees' payroll records. Hall Aff. ¶ 22.

Plaintiffs have submitted deposition testimony of Michael Brown and Kelly Stone, in which both attest to having performed "electrical work" for Defendant. Stone Dep. (Dkt. No. 11-5) at 45; Brown Dep. (Dkt. No. 11-5) at 70, 86. Brown and Stone have not been certified or licensed to perform electrical work, nor have they served apprenticeships. Stone Dep. at 5; Brown Dep. at 8. Defendant has not contributed to the Funds on behalf of either worker. Rahm Aff. ¶¶ 21-24. According to Brown, he performed electrical work 75% of the time, Brown Dep. at 70, and Stone performed electrical work 80-90% of the time, Brown Dep. at 86. Over the course of the period in question, Plaintiffs' calculations reflect that Brown worked 8,447 hours and Stone worked 9,840 hours. Pozefsky Aff. (Dkt. No. 22-4) ¶ 11; Rahm Aff. ¶ 24. Based on those calculations, Plaintiffs request contributions of $54,031.84 for Brown and $99,340.30 for Stone. Id. ¶ 46. Defendant asserts that its records indicate that Brown worked fewer hours (8,967.50) during the period in question than Plaintiffs allege, and it argues that the percentage of time Brown and Stone estimate that they spent on "electrical work" is "a flawed guess." Hall Aff. ¶¶ 19-20, 22; Wukitsch Aff. ¶ 9.

Plaintiffs moved for partial summary judgment on February 27, 2009, seeking a declaration that Defendant is obligated to contribute to the benefit funds on behalf of Defendant's non-union employees who performed electrical work for the period from January 1, 2003 to the present; unpaid contributions to the Funds allegedly owed by Defendant on behalf of Michael Brown and Kelly Stone; and auditor's fees. Dkt. No. 11; Rahm Aff. at 17-18. Defendant opposes the Motion. Dkt. No. 17.

### III.   STANDARD OF REVIEW

A court shall grant summary judgment where "'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 82 (2d Cir. 2002). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322 (1986).

In determining whether the movant has met its burden, the court resolves "'[a]ll facts, inferences, and ambiguities . . . in a light most favorable to the nonmovant.'" Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 587 (1986)). If the movant satisfies its initial burden, the non-moving party must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks and citation omitted) (alterations in original); see FED. R. CIV. P. 56(e).

Under New York law, "'a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning.'" Gesualdi v. Laws Constr. Corp., No. 09 Civ. 1067, 2010 WL 5185067, at *3 (S.D.N.Y. Dec. 22, 2010) (quoting Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008)). Thus, "'the initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is

6

unambiguous with respect to the question disputed by the parties.'" Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010) (quoting Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010)). This inquiry "is a question of law for the court." Law Debenture Trust, 603 F.3d at 465. "An ambiguity exists where the terms of the contract 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.'" Law Debenture Trust, 595 F.3d at 466 (quoting Int'l Multifoods Corp., 309 F.3d at 83).

**IV. DISCUSSION**

In determining whether the language of a collective bargaining agreement is ambiguous as to its application to union or non-union employees, several courts in this circuit have found instructive the Sixth Circuit's decision in Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co., 749 F.2d 315 (6th Cir. 1984). See, e.g., Cent. Pension Fund of Int'l Union of Operating Eng'rs, Participating Emp'rs v. Murphy's Tire, Inc., No. 97-CV-814, 1998 WL 865594, at *5 (N.D.N.Y. Dec. 9, 1998); Demolition Workers Union v. Mackroyce Contracting Corp., No. 97 Civ. 4094, 2000 WL 297244, at *4 (S.D.N.Y. Mar. 22, 2000); Trs. of Local 807 Labor-Management Health & Pension Funds v. River Trucking and Rigging, No. CV-03-3659, 2005 WL 2290579, at *3 (E.D.N.Y. Sept. 20, 2005); Trs. of the Buffalo Laborers' Pension Fund v. Accent Stripe, Inc., No. 01-CV-76C, 2007 WL 1540267, at *6 (W.D.N.Y. May 24, 2007). In Kohn, the court identified four criteria relevant to determining the applicability of a collective bargaining agreement to non-union employees. 749 F.2d at 318-19. First, the "presence in the [collective bargaining agreement] of a recognition clause designating the union as the exclusive bargaining agent for all employees

7

indicates that fringe benefit contributions are required for both union and non-union members." Id. at 318. Second, defining employees by job classification indicates that all employees within that classification are covered by the agreement regardless of union membership. Id. Third, the absence of language distinguishing between union and non-union employees also indicates that the agreement applies to union and non-union employees alike. Id. Fourth, the presence of a union shop clause suggests the applicability of the agreement to all employees. Id.

### A. The Recognition and Union Security Clauses Demonstrate the CBA's Applicability to all Employees.

Before turning to the obligations associated with contributions to the specific funds, the Court must first determine whether the CBA as a whole implicates the parties' rights and obligations with respect to non-union employees. For the following reasons, the Court finds it does.

The presence of a recognition clause in a collective bargaining agreement indicates that the agreement applies to union and non-union employees alike. Id. The recognition clause in Kohn provided that "[t]he employer recognizes the union as the sole and exclusive bargaining agent on behalf of all employees of the Employer." Id. at 318, n. 3. The court there held that the use of the language "all employees" in the recognition clause indicated the applicability of the collective bargaining agreement to both union and non-union employees. Id. at 319. In contrast, where a recognition clause provides that "[t]he Association and Union . . . are negotiating agents for their present and future members," courts have reached the opposite conclusion. See Onondaga Cty. Laborer's Health and Welfare v. Geddes Glass & Metal, Inc., No. 01-CV-1330, 2005 WL 4939059 at * 3254 (N.D.N.Y. Jan. 19, 2005) (finding that a CBA did not apply to non-union employees where the recognition clause did not refer to "bargaining unit members" or "all employees," but

8

instead referred only to "present and future [union] members").

Here, the recognition clause, Section 2.11(c) of the CBA, requires that the Employer recognize the Union as the "collective bargaining representative for all employees performing electrical construction work within the jurisdiction of the Local Union." Ternant Aff. (Dkt. No. 22-2) Ex. B. Use of the language "all employees" indicates the CBA's applicability to both union and non-union employees.

The presence of a union shop clause can also be indicative of a collective bargaining agreement's applicability to both union and non-union members. Kohn, 749 F.2d at 318. Where a union shop clause uses language such as "all employees covered," or "covered employees," "equating covered employees with union members would render the clause meaningless." Demolition Workers, 2000 WL 297244, at *5; Kohn, 749 F.2d at 315; Murphy's Tire, 1998 WL 865594, at *5. The presence of a union shop clause here indicates the CBA's applicability to union and non-union members. The Union Security clause in the CBA uses the language "all employees covered." Ternant Aff. (Dkt. No. 22-2) Ex. B. This language is similar to the union shop clauses found in the Kohn ("regular employee covered by this agreement"), Murphy's Tire ("all employees covered by [the agreement]"), and Mauro's Plumbing ("[employees] covered by this agreement") cases. Such language "suggests that employees covered by this agreement may exist prior to and apart from union-member employees." Kohn, 749 F.2d at 319 (internal quotation marks omitted). Accordingly, the Court finds the CBA applicable to all employees without distinction based on union membership.

**B. The Health and Welfare Fund Unambiguously Requires Defendant to Contribute on Behalf of Non-Union Employees.**

9

Section 6.02 of the CBA provides, "The Employer shall contribute five dollars and thirty cents ($5.30) per hour for each electrical worker employed by him in the jurisdiction of the Local Union into the Welfare Fund of such Local." CBA at 48. This language unambiguously requires Defendant to make contributions to the Welfare Fund on behalf of any "electrical worker" it employs, regardless of that employees union status.

The Court reaches the above conclusion guided by the second and third factors identified in Kohn. The Kohn court notes that a collective bargaining agreement that designates beneficiary employees by job classification or tasks performed, as opposed to union status, requires contributions on behalf on both union and non-union employees. Kohn 749 F.2d at 318; see also Mauro's Plumbing, 84 F. Supp. 2d at 354; Murphy's Tire, 1998 WL 865594 at *6.

Here, Section 6.02 of the CBA requires contributions to the Health and Welfare Fund to be made on behalf of "each electrical worker employed by [the employer] in the jurisdiction of [the Union]." CBA at 48. As in Kohn, Mauro's Plumbing, and Murphy's Tire, this provision of the CBA designates beneficiaries based solely on the work they perform; no reasonable construction of that provision would condition its applicability on union status. Because this section does not make a distinction between union and non-union employees who perform electrical work, but is instead applicable to the general class of employees who perform electrical work, it unambiguously obligates Defendant to make contributions to the Health and Welfare Fund on behalf of Brown and Stone. Therefore, the Court grants Plaintiffs' Motion for summary judgment with respect to the Health and Welfare Fund.

### C. The CBA is Ambiguous as to Defendant's Obligation to Contribute to the Pension and Annuity Funds on Behalf of Non-Union Employees.

10

Article VI Sections 6.03 and 6.04 require employer contributions to the Pension and Annuity Funds on behalf of "each journeyman/wireman and third through sixth Period apprentice" and "each Journeyman Wireman and Third through Sixth Period Apprentices", respectively. CBA at 49. Defendant insists that "Journeyman Wireman" is a union term and does not apply to non-union workers Brown and Stone. Def's MOL at 9-11. Construed in the light most favorable to Defendant, the term, "each Journeyman Wireman," does not unambiguously include non-union employees.

Unlike the provision of the Health and Welfare Fund, the CBA provisions relating to the Pension and Annuity Funds arguably distinguish between union and non-union members through their employment of the trade language "journeyman/wireman" and different levels of "apprentices." Thus, there remain issues of material fact as to whether the language used is meant to refer specifically to members of the union who hold the stated titles. Accordingly, the Court denies Plaintiffs' Motion as it pertains to Defendant's alleged obligation to contribute to the Pension and Annuity Funds.

### D. Genuine Issues of Material Fact Remain Regarding the Calculation of Damages and Fees.

Summary judgment is not appropriate with respect to any calculation of damages because the parties present conflicting accounts with respect to the amount of time Michael Brown and Kelly Stone performed electrical work for Defendant. Thus, the Court leaves the issue of damages open.

### E. No Triable Issue Remains as to Defendant's Liability for Auditor Fees

The audit of Defendant's records occurred in 2006. Section 6.12 of the collective bargaining agreement then in effect provides that "any Employer who becomes delinquent in making payments to the respective trust funds shall be liable for the for the amount of delinquent contributions . . . and

collective expenses, including . . . audit fees incurred to obtain or ascertain the amount of delinquencies." See Rahm Aff., Ex. G (Dkt. No. 11-6) at 41-42.  Defendant asserts, however, that it "should not be held liable for auditor fees because the CBA does not authorize payment of contributions for non-union employees and the payroll of non-union employees was the subject of the audit." Hall Aff. ¶ 21.  As noted above, *supra* sec. IV.B, this is incorrect.  The CBA does authorize payment of contributions for non-union employees, and, in fact, obligates Defendant to make such contributions, at least with respect to the Health and Welfare Fund.  Accordingly, Defendant is liable for the auditor fees.

**IV. CONCLUSION**

For the foregoing reasons, it is

    **ORDERED**, that Plaintiffs' Motion for partial summary judgment (Dkt. No. 11) is **GRANTED in part** and **DENIED in part** consistent with this opinion; and it is further

    **ORDERED**, that Defendant file with the Court a copy of its invoice analysis with regard to Kelly Stone and Michael Brown and provide a set of the same to Plaintiffs' counsel; and it is further

    **ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:  March 25, 2011
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge